UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Erick Peeples, *et al.*,

    Plaintiffs,

v.                                                                     Civil Action No. 13-13858

City of Detroit, *et al.*,                                    Sean F. Cox
                                                                  United States District Court Judge

    Defendants.
_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING REQUEST FOR SANCTIONS/ATTORNEY FEES**

Plaintiffs are eleven firefighters who were laid off by the City of Detroit during a reduction in force. Plaintiffs were recalled to work 80 days after being laid off and their labor union successfully grieved their layoffs, securing a settlement under which the City agreed to a "make-whole" award of backpay for each Plaintiff. Plaintiffs then filed this action, asserting Title VII race discrimination claims against the City and their Union. This Court previously granted summary judgment in favor of both the City and the Union. This Court's rulings as to the City were affirmed on appeal. But the Sixth Circuit changed its position on the issue of whether a union has to show a breach of the duty of fair representation in order to proceed with a Title VII claim. Because this Court had granted summary judgment in favor of the Union on that issue, without considering the merits of the Title VII claims against the Union, the case was remanded as to the claims against the Union. Following remand, the Union filed a new summary judgment motion. That motion has been briefed by the parties and the Court concludes that oral argument is not necessary. The Court therefore orders that the motion shall be decided without a

1

hearing. Local Rule 7.1(f). For the reasons below, the Court shall GRANT the Union's summary judgment motion but shall DENY their request for an award of sanctions/attorney fees.

## BACKGROUND

**A.     Procedural Background**

On September 10, 2013, Plaintiffs filed this action asserting Title VII disparate-treatment race discrimination claims against: 1) the City of Detroit ("the City"); and 2) the Detroit Fire Fighters Association, Local 344, IAFF, AFL-CIO ("the Union" or the "DFFA").

Following the close of discovery, each Defendant filed a Motion for Summary Judgment. After full briefing by the parties, this Court issued an Opinion & Order on January 26, 2017, wherein it granted both motions. (ECF No. 91).

As to the City's motion, this Court concluded that Plaintiffs failed to present direct evidence to support their claims and that they also failed to establish a prima facie case under the circumstantial evidence approach, which includes a heightened burden in this reduction-in-force case. (*Id*. at 2).

As to the Union's motion, this Court granted summary judgment in favor of the union because Plaintiffs cannot establish that the Union breached its duty of fair representation to Plaintiffs which, under then-existing Sixth Circuit case law, they must do in order to proceed with a Title VII claim against the Union. The Court also granted the Union's motion "because Plaintiffs have been reinstated and made whole, and other types of damages claimed by Plaintiffs are unavailable as to the Union." (*Id*. at 2).

Plaintiffs appealed this Court's rulings. The EEOC appeared in the action and filed an amicus curiae brief, urging the Sixth Circuit to change its position and rule that the standards

governing a duty of fair representation claim do not govern Title VII discrimination claims against a union.

In a published opinion, the Sixth Circuit affirmed this Court's summary judgment ruling in favor of the City. *Peeples v. City of Detroit*, 891 F.3d 622 (6th Cir. 2018). The Sixth Circuit agreed that Plaintiffs had not produced any direct evidence in support of their claims. *Id*. at 633-34. The appellate court also agreed that Plaintiffs had not met their burden under the circumstantial-evidence approach. *Id*. at 634-36.

The Sixth Circuit then changed its position on the issue of whether a union has to show a breach of the duty of fair representation in order to proceed with a Title VII claim. *Id.* at 636-38. Because this Court had granted summary judgment in favor of the Union on that issue, without considering the merits of the Title VII claims against the Union (as it did with the City), the case was remanded as to the Title VII claims against the Union. The court noted that both compensatory and punitive damages are available as to a Title VII claim. *Id.* at 638. But, as to the issue of whether Plaintiffs could potentially recover an award for backpay, the Sixth Circuit affirmed this Court's ruling that Plaintiffs cannot recover backpay. Thus, even if Plaintiffs could survive summary judgment as to their Title VII claims, they cannot recover backpay in this action.

Following remand, the Union filed the instant summary judgment motion, that addresses the merits of Plaintiffs' Title VII claims against the Union. (ECF No. 122).

Plaintiffs responded to that motion by filing a response brief, with no exhibits. (ECF Nos. 131 & 135). In that brief, Plaintiffs reference, by docket number, various portions of the record evidence that was previously submitted to the Court by the parties, in connection with the

3

prior summary judgment motions. Thus, rather than provide the referenced materials to the Court in a binder of exhibits, Plaintiffs left it to the Court to go find each referenced document in the docket in order to review it. Most importantly, Plaintiffs did not provide the Court with any evidence that was not previously provided to the Court. As such, there is no new evidence before the Court.

**B.     Factual Background**

This Court's prior opinion (ECF No. 91) contains a section that includes the facts established by the record evidence previously submitted by the parties. The Sixth Circuit summarized the relevant facts as follows:

> On July 18, 2013, the City of Detroit filed for bankruptcy protection. Prior to the filing, on July 2, 2012 the City notified agencies that the City would initiate RIF activities across different agencies, with a goal to lose 2,227 employees through various means, including layoffs. The Detroit Fire Department ("DFD") received notification on June 18, 2012, that the deadline for implementation of layoffs for the July 1, 2012 fiscal year was passing that day, and as of July 2, 2012, the DFD would not be in compliance with its 2012-2013 fiscal budget. Two days later, the City notified the DFFA by letter that layoff notices would be issued in accordance with the collective bargaining agreement ("CBA") between the parties and attached a matrix with the number of reductions to be made, detailed by position. According to this initial matrix, twenty-two firefighters would be laid off.
>
> To effectuate the RIF, Human Resources Officer Roger Williams applied Human Resources Rule 10, which indicated that the RIF should be based on total city seniority, determined by total number of years as a city employee. Plaintiffs were not included in the group to be laid off. According to Williams, after he created the RIF matrix, the DFFA contested the City's methodology and argued that departmental seniority should apply to layoffs, rather than total city seniority. On July 30, 2012, the DFFA provided the City with lists by departmental seniority. Plaintiffs were included in this list. The next day, the DFFA filed Grievance #17-12, a class action grievance alleging that the City's proposed RIF violated the parties' CBA. On August 10, 2012, the City proceeded with the RIF by departmental seniority, as urged by the DFFA, and laid off twenty-seven firefighters, including ten of the Plaintiffs. Plaintiff Anthony McCloud was demoted from firefighter to fireboat deckhand.
>
> In September 2012, the DFFA changed its position and agreed that total city

seniority was in fact the proper method for layoffs under the CBA. Plaintiffs were
recalled to work on October 29, 2012. Their layoff had lasted eighty days. In
March 2013, the DFFA and the City finalized a settlement, which provided
Plaintiffs with backpay, overtime pay, and medical expenses.

*Peeples v. City of Detroit*, 891 F.3d at 627-28.

## ANALYSIS

Plaintiffs allege that the Union subjected them to disparate treatment on account of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Under Title VII, it is an unlawful for a labor organization to "cause or attempt to cause an employer to discriminate against an individual." 42 U.S.C. § 2000e-2(c)(3).

It is now undisputed that the familiar Title VII burden-shifting framework applies to Plaintiffs' Title VII claims against the Union. At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

### I. Direct Evidence

If Plaintiffs can establish direct evidence of discrimination, then they survive summary judgment and "need not go though the *McDonnell Douglas* burden-shifting analysis." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). As explained in *Peeples*:

> "[D]irect evidence is that evidence which, if believed, requires the conclusion that
> unlawful discrimination was at least a motivating factor in the employer's
> actions." *Id.* Inferences are not permitted. *Rowan v. Lockheed Martin Energy Sys.,
> Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

*Peeples*, 891 F.3d at 633.

Plaintiffs' brief references their having "direct evidence," (*see* Pls.' Br. at 23 & 26) but they do not come out and specify what they believe is the direct evidence that could support their

5

claims. So this Court will address all references to evidence that Plaintiffs may be trying to characterize as direct evidence.

Plaintiffs again appear to argue that direct evidence exists as to a City employee named Roger Williams having made a statement about the union not wanting to "lay those white boys off." (Pls.' Br. at 11). Plaintiffs direct the Court to one page of Plaintiff McCloud's deposition testimony that "Mr. Poe told me that Roger Williams said to him that the DFFA didn't want to lay those white boys off," and to one page of Plaintiff Rivera's deposition testimony that he "did hear when Poe had met with Roger Williams and that Roger Williams had mentioned to him that we were getting laid off to save the white boys." (ECF No. 68-26 at PageID3163 & ECF No. 68-30 at PageID 3241). But once again, the cited deposition testimony is inadmissible hearsay.

Plaintiffs may believe that testimony from Secretary Singleton constitutes direct evidence, as their brief states that she "admitted to Plaintiff Peeples that the initial layoff notices sent were rescinded in order to save the 2004 Class (largely composed of white fire fighters with no added City seniority) from being laid off again." (*Id*. at 27). The cited evidence is Peeples' deposition transcript at pages 114-116, wherein Peeples testified that, although no one from the executive board had said anything about race to Singleton, she drew the conclusion that someone was "trying to protect the white boys," based on the races of persons who were impacted by the layoffs. That does not constitute direct evidence.

Plaintiffs also suggest that alleged statements by President McNamara or others constitute races discrimination:

> President McNamara himself instructed the white firefighters to "ball up their layoff notices" because the African-American firefighters would be laid off instead. [DN 130-3, at page 78] When the white firefighters scheduled for layoff received their layoff notices, DFFA officers Pegg and Shinkske met with several

6

senior white firefighters who demanded that the DFFA fight to use departmental time to "save the sons or brothers of the white guys."

(Pls.' Br. at 28; *see also* page 8 of Pls.' Br.)

In support of the assertion about McNamara telling white firefighters to ball up their layoff notices because African-American firefighters would be laid off first, Plaintiffs direct the Court to: 1) ECF No. 130-3 at 78; and 2) ECF No. 68-19 at PageID 3087-88. The first reference is a single page of Plaintiff Poe's deposition transcript, that does not include any statements having been made about race. The second is two pages from Plaintiff Fields's deposition transcript wherein he testified as follows:

> Q. Have you ever heard Dan, Rob, or Jeff say anything derogatory about the layoffs, as in, "We're going to save the white guys and lay off the minorities"?
> A. No.
> Q. Did you ever talk to Teresa Sanderfer about the layoffs?
> A. Yes.
> Q. What did you guys talk about?
> A. We – we talked about how coincidental it was that the class that got saved were all white and related to, well, majority, they were all Caucasian and majority related, I mean related to other individuals within the fire department, like chiefs and captains and stuff like that.
> Q. I don't understand.
> A. Coincidentally they were white and another group within that group were related to people who were already on the job, like chiefs, captains, legacy firefighters so to speak.
> Q. So you're saying nepotism?
> A. Yes.
> Q. And your proof of that are the documents.
> A. Yes, and their actions.
> Q. What actions?
> A. Revising the list and laying us off and keeping them, and also telling them that they didn't have to worry about being laid off. Well, as I stated earlier, telling them to ball up their layoff notice and we'll make the other guys take it.

7

>    Q. But you never heard Dan say that?
>    A. No, I never did.

(ECF No. 68-19 at PageID 3087-88). None of this constitutes direct evidence.

As to the second sentence, Plaintiffs' Brief directs the Court to "[DN 68-33, PageID #3305]" to support that statement. That is a single page of Teresa Singleton's deposition transcript wherein she testified:

>    Q. At some pint in those discussions between you and Dan –
>    A. Yes, sir.
>    Q. – did Dan make any comments or suggestions about the race of the people that were being affected?
>    A. Yes, sir.
>    Q. What did he say?
>    A. He said that *it was a rumor* that *somebody told him* that, he wasn't going to mention any names, that Jeff and Rob had had some meetings with white guys and they were – Jeff and Rob was told to save their sons or brothers, or whomever, and Dan said, "I hope that's not true."

(*Id.*) (emphasis added). This also does not constitute direct evidence.

Accordingly, the Court finds that Plaintiffs have not submitted any direct evidence to support their Title VII claims against the Union.

## II. Circumstantial Evidence And A Reduction In Force

Next, the Court must consider whether Plaintiffs can establish a prima facie case of discrimination with circumstantial evidence. As explained in *Peeples*, "[t]o do so the *McDonnell Douglas* burden shifting framework requires that Plaintiffs prove four elements: (1) they were members of a protected class; (2) they suffered adverse employment actions; (3) they were qualified for their positions; and (4) they were replaced by someone outside the protected class or were treated differently than similarly-situated, non-protected employees. *Peeples*, 891 F.3d at 634 (citations omitted). The burden would then shift to the Union to articulate some

legitimate, nondiscriminatory reason for the challenged employment decision. *Id*. If the Union "does so, then Plaintiffs need to demonstrate the reason given was pretextual." *Id*.

As was the case with the Title VII claims asserted against the City, the parties agree that only the fourth element is at issue. Moreover, that fourth element *is heightened* because this case involves a reduction in force ("RIF"). "In a RIF case, a plaintiff must show 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Peeples*, 891 F.3d at 634 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

As explained above, Plaintiffs have no direct evidence of race discrimination. In opposing the Union's motion, Plaintiffs have not presented any statistical evidence to this Court. That leaves only circumstantial evidence as a means of meeting the heightened burden as to the fourth element of a prima facie case in this RIF case.

In *Barnes*, the Sixth Circuit gave examples "of valid circumstantial evidence" for purposes of the heightened burden, in an age discrimination case. *Peeples,* 891 F.3d at 634. The "plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff." *Barnes*, 896 F.2d at 1466. "Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive." *Id*. "The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of" race. *Id*.

Here, Plaintiffs have not attempted to present evidence that could establish that Plaintiffs had superior qualifications than their non-protected counterparts who were not laid off. Nor

9

have Plaintiffs presented any admissible evidence of the Union having made any statements indicative of a discriminatory motive.

Rather, Plaintiffs have mischaracterized the evidence they rely on, and continue to rely on inadmissible hearsay, and testimony about speculation and "rumors." That is insufficient. The Court finds that Plaintiffs have failed to meet their burden of establishing the forth element of a prima facie case in this RIF case.

### III. Request For Fees And Expenses Under § 1927 And/Or Title VII

The Union asks this Court to "award fees, expenses, and costs incurred by DFFA since August 28, 2018, when plaintiffs and their counsel insisted on prolonging this litigation – after the Sixth Circuit held that plaintiffs' 'cursory assertion' of discrimination is evidence-free and does not pass 'muster' under Title VII." (Def.'s Br. at 19). The Union asks this "Court to award post-remand fees, expenses, and costs to DFFA – payable by plaintiffs under Title VII and by plaintiffs' counsel under Section 1927 – and to direct further proceedings to quantify the appropriate award." (*Id.*).

The Union made this request for relief in a single paragraph, and did not apprise the Court of the amount of fees and expenses it has incurred. Thus, if the Court were to consider the request, that would require additional briefing and/or hearings.

The Union's brief also fails to include any discussion of the applicable standard for awarding attorney fees to a *prevailing Defendant* in a Title VII case.

28 United States Code § 1927 is titled, "Counsel's liability for excessive costs" and provides:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Sixth Circuit has explained:

> Section 1927 sanctions are warranted when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ruben v. Warren City Sch.,* 825 F.2d 977, 984 (6th Cir.1987). The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy. *See Jones v. Continental Corp.,* 789 F.2d 1225, 1230-31 (6th Cir.1986). A sanctioned attorney is thus required to personally satisfy the excess costs attributable to his misconduct. *See In re Ruben,* 825 F.2d 977, 983 (6th Cir.1987).
>
> Furthermore, *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67, 100 S.Ct. 2455, 65 L.Ed.2d 488(1980), held that federal courts have the inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith. However, unlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence. *See In Re Rubin,* 825 F.2d at 984; *Jones,* 789 F.2d at 1230 ("we hold that 28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety."). Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings.

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Here, the Court does not find that there is a showing of more than incompetence and declines to sanction Plaintiffs' counsel under § 1927.

The Court also concludes that the Union has not shown that an award of attorney fees against the Plaintiffs themselves is warranted in this case. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) (A district court may, in its discretion, award attorney fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith). Such

11

awards against Title VII plaintiffs are rare, and this Court does not believe one is warranted here.

## CONCLUSION & ORDER

For the reasons set forth below, the Court ORDERS that the Union's Motion for Summary Judgment is GRANTED and Plaintiffs' claims against the Union shall be dismissed with prejudice. IT IS FURTHER ORDERED that the Union's request for an award of sanctions and/or attorney fees is DENIED.

IT IS SO ORDERED.


Dated: February 4, 2019            s/ Sean F. Cox
                                   Sean F. Cox
                                   U. S. District Judge